*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0014p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ROBERT TODD, et al.,

>                              *Plaintiffs-Appellees,*

                                                              No. 04-4109

    *v.*

WELTMAN, WEINBERG & REIS CO., L.P.A.,
                              *Defendant-Appellant,*

MARK N. WISEMAN,

>                              *Defendant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00171—Susan J. Dlott, District Judge.

Argued: November 29, 2005

Decided and Filed: January 13, 2006

Before: CLAY and COOK, Circuit Judges; COOK, District Judge.[*]

_____

### COUNSEL

_____

**ARGUED:** Christine M. Haaker, THOMPSON HINE, Dayton, Ohio, for Appellant. Stephen R. Felson, NEWMAN & MEEKS CO., Cincinnati, Ohio, for Appellees. **ON BRIEF:** Christine M. Haaker, THOMPSON HINE, Dayton, Ohio, for Appellant. Stephen R. Felson, NEWMAN & MEEKS CO., Cincinnati, Ohio, for Appellees.

_____

### OPINION

_____

CLAY, Circuit Judge. Defendant Weltman, Weinberg, & Reis Co., L.P.A. appeals an August 3, 2004 collateral order of the United States District Court for the Southern District of Ohio denying Defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) against Plaintiff Robert Todd's claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1691 *et seq.*, specifically violations of 15 U.S.C. §§ 1692e and 1692f. While the district court has not yet rendered final judgment, this Court reviews the collateral order

---

[*] The Honorable Julian A. Cook, United States District Judge for the Eastern District of Michigan, sitting by designation.

of the district court denying Defendant absolute immunity. For the following reasons, we **AFFIRM** the district court's order.

## I. BACKGROUND

### A.    PROCEDURAL HISTORY

On August 11, 2003, Plaintiff filed a complaint against Defendant in the United States District Court for the Southern District of Ohio. Plaintiff alleged Defendant violated the FDCPA, specifically 15 U.S.C. §§ 1692e and 1692f. Section 1692e of Title 15 of the United States Code states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f of Title 15 of the United States Code states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

On February 17, 2004, Defendant filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendant's motion was based on four grounds: (1) the district court did not have subject matter jurisdiction over Plaintiff's claim because of the *Rooker-Feldman* doctrine; (2) res judicata barred Plaintiff's claim; (3) Defendant was absolutely immune for its actions; and (4) the FDCPA was inapplicable to Defendant's actions. On August 3, 2004, the district court denied Defendant's motion on all grounds.

On September 1, 2004, Defendant timely appealed the district court order with respect to the issue of witness immunity. On September 20, 2004, Defendant filed a motion with the district court to certify that the district court's order involved a collateral order that was immediately appealable. On September 21, 2004, the district court denied the motion.

Plaintiff filed a motion to dismiss Defendant's appeal and a motion for sanctions. On February 9, 2004, this Court denied Plaintiff's motions. The Court found that the district court's denial of absolute immunity to Defendant was a collateral order that was immediately appealable in the absence of a final judgment.

### B.    FACTS

Plaintiff is a resident of Cincinnati, Ohio. Plaintiff's sole source of income is Social Security Insurance Benefits, and he receives $750 per month for himself. He also receives $190 per month for each of his minor children. His wife is presently receiving short-term disability payments for an injury she sustained.

In 1992, Plaintiff purchased furniture from Value City, and Plaintiff financed the purchase with a loan from ITT Financial Services. Plaintiff defaulted on the loan, and Defendant brought suit on behalf of the creditor and obtained a judgment. Defendant then initiated proceedings to garnish Plaintiff's bank account. In order to commence such a proceeding under Ohio law, Defendant must file an affidavit which states that "the affiant has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States." Ohio Rev. Code Ann. § 2716.11. On February 23, 2003, Defendant submitted an affidavit that conformed to the Ohio statute to the Hamilton County Municipal Court. The court found that the affidavit was valid and froze the funds in Plaintiff's bank account.

On February 12, 2003, Plaintiff requested a hearing to contend that the funds in his bank account were exempt because they derived from Plaintiff's Social Security benefits and his wife's short-term disability benefits. On February 28, 2003, the court held that the funds were exempt.

Plaintiff contended that prior to submission of the affidavit, Defendant did not conduct a debtor's exam, did not undertake discovery as to whether Plaintiff possessed non-exempt assets, and otherwise had no factual basis for believing that Plaintiff's bank account contained non-exempt assets.

## II. DISCUSSION

### A. THE *ROOKER-FELDMAN* DOCTRINE DOES NOT PRECLUDE THIS COURT'S SUBJECT MATTER JURISDICTION

#### 1. Standard of Review

This Court reviews questions of subject matter jurisdiction *de novo*. *Green v. Ameritech Corp.*, 200 F.3d 967, 972 (6th Cir. 2000).

#### 2. Analysis

This Court has an independent obligation to determine whether the Court has subject matter jurisdiction. *Olden v. LaFarge Corp.*, 383 F.3d 495, 498 (6th Cir. 2004). That said, the *Rooker-Feldman* doctrine does not divest this Court of subject matter jurisdiction because the instant case is outside the scope of the doctrine.

##### a. Legal Framework

In *Rooker v. Fidelity Trust Co.*, the plaintiffs filed an action in state court, and the state court ruled against the plaintiffs. 263 U.S. 413, 414 (1923). The state supreme court affirmed the decision. *Id.* The plaintiff then filed an action in federal district court alleging that the state court decision violated various federal constitutional provisions. *Id.* at 414-15. The district court dismissed the suit for lack of subject matter jurisdiction, and the Supreme Court affirmed. *Id.* at 415. The Court found that federal district courts were only empowered with original jurisdiction, and that they did not have appellate jurisdiction to hear a claim that a state court's decision was in error. *Id.* at 416. Only the Supreme Court had such appellate jurisdiction. *Id.*

In *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), the Supreme Court reiterated its decision in *Rooker*. There, the plaintiff Feldman was an individual who sought to practice law but did not graduate from an accredited law school. *Id.* at 465. Instead, he completed a structured program of the State of Virginia where he studied in a practitioner's office, audited classes at the University of Virginia School of Law, and served as a judicial clerk with a federal district court. *Id.* The plaintiff passed the Virginia bar examination and was admitted to that state's bar. *Id.* The plaintiff then sought admission to the bar of the District of Columbia; however, the district had a rule that limited bar membership to graduates of ABA-accredited schools. The plaintiff filed a petition with the District of Columbia Court of Appeals to waive the graduation requirement, and the "state" court denied the plaintiff's petition. *Id.* at 466-68. The plaintiff then filed a complaint in the federal district court challenging the state court decision. *Id.* at 468. The plaintiff Hickey had a similar experience: he graduated from an unaccredited law school and petitioned the state court for waiver of the graduation requirement. *Id.* at 470-72. The state court denied his petition, and the plaintiff filed suit in federal district court.

The Supreme Court found that the federal district court lacked subject matter jurisdiction over an appeal from a state court judicial proceeding. *Id.* at 476. As a result, the plaintiffs could not challenge the state court's refusal to waive the graduation requirement in federal district court. *Id.* at 478-79. The plaintiffs could, however, challenge the constitutionality of the graduation requirement itself in federal district court, as the state court promulgated the rule in a non-judicial setting. *Id.* at 482-86. The Court also ruled that the federal district court lacked jurisdiction over

plaintiffs' claim that the state court arbitrarily denied them a waiver of the rule; the Court reasoned that such a claim was "inextricably intertwined" with the state court's judicial decisions in denying the plaintiffs' petitions. *Id.* at 486-87.

Subsequent to these cases, the federal courts of appeals began to apply the *Rooker-Feldman* doctrine to preclude federal subject matter jurisdiction in a wide variety of cases where the state court also asserted jurisdiction. Because of the inconsistencies between the circuits, the Supreme Court addressed the scope of the *Rooker-Feldman* doctrine in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 125 S. Ct. 1517 (2005).

The Supreme Court in *Exxon Mobil* held that the *Rooker-Feldman* doctrine applied only to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 1521-22. *Exxon Mobil* dealt specifically with the case where there were parallel state and federal cases on the same issue. The court held that normal preclusion jurisprudence, not *Rooker-Feldman*, would guide the federal court decision if the state court reached a decision first. *Id.* at 1527. In dicta, the court also addressed the circumstance where the plaintiff initiated a federal claim after a state court decision:

> Nor does § 1257 stop a district court from exercising subject matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Id.* (alteration in the original) (quoting *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

### b.        Application to this Case

The *Rooker-Feldman* doctrine does not preclude jurisdiction over Plaintiff's claim. Defendant in the instant case claims this Court lacks subject matter jurisdiction because Plaintiff's federal claim is inextricably intertwined with the Ohio state court decision that Defendant's affidavit was valid. This argument ignores the fact that Plaintiff here does not complain of injuries caused by this state court judgment, as the plaintiffs did in *Rooker* and *Feldman*. Instead, after the state court judgment, Plaintiff filed an independent federal claim that Plaintiff was injured by Defendant when he filed a false affidavit. This situation was explicitly addressed by the *Exxon Mobil* Court when it stated that even if the independent claim was inextricably linked to the state court decision, preclusion law was the correct solution to challenge the federal claim, not *Rooker-Feldman*. *See supra*. While Defendant is technically correct that this guidance was not essential to the holding on the facts of *Exxon Mobil*, as that case dealt with parallel state and federal proceedings, the Supreme Court went beyond the facts of the case to give clear instructions to the circuits on how to address additional factual situations. To follow the reasoning of Defendant would be to ignore these unambiguous directives from the Supreme Court.

The Court will not address the preclusive effect of the state court judgment, as this goes beyond the required jurisdictional determination and the issue on appeal.

**B.     THE DISTRICT COURT DID NOT ERR WHEN IT DENIED ABSOLUTE IMMUNITY TO DEFENDANT**

### 1.     Standard of Review

This Court reviews the district court decision denying Defendant absolute immunity *de novo*. *Brookings v. Clark*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)).

### 2.     Analysis

#### a.     Legal Framework

In *Briscoe v. LaHue*, the Supreme Court held that police officers were absolutely immune from suit for their testimony at trial.[1] 460 U.S. 325, 345-46 (1983). In reaching its decision, the Court recited the history of the long-established rule that private witnesses were absolutely immune from damages liability for their testimony in judicial proceedings. *Id.* at 330-34. The rationale behind this absolute immunity was twofold: first, "witnesses might be reluctant to come forward to testify," *id.* at 333; second, those witnesses who came forward might distort their testimony because of fear of subsequent liability, *id.* The Court found that "the truth-finding process is better served if the witness's testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.'" *Id.* at 333-34 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 440 (1976)).

In *Malley v. Briggs*, the Supreme Court held that police officers were not absolutely immune from suit for seeking an arrest warrant based on deficient probable cause. 475 U.S. 335, 340-41 (1986). The Court found that the police officer resembled a "complaining witness," and a complaining witness was liable at common law for making a complaint with malice and without probable cause. *Id.* The Court also rejected the argument that a police officer, when seeking an arrest warrant, makes a discretionary judgment similar to the absolutely protected judgment of a prosecutor seeking an indictment from a grand jury. *Id.* at 341-42 (referencing *Imbler*, 424 U.S. 409). In reaching its decision, the Court reasoned: "We intend no disrespect to the officer applying for a warrant by observing that his action, while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." *Id.* at 342-43.

The Court went on to refine its "complaining witness" analysis in *Kalina v. Fletcher*, 522 U.S. 118 (1997). There, the state prosecutor initiated criminal proceedings against the defendant and filed three documents, two of which were unsworn, in support of the arrest warrant. *Id.* at 120-21. Under state law, an arrest warrant needed to be supported by sworn statements. *Id.* at 121. In order to satisfy this requirement, she summarized the evidence supporting the charge, including the evidence in the unsworn statements, in a "Certification for Determination of Probable Cause," and she personally vouched for the truth of the facts in the certification under penalty of perjury. *Id.* at 121. The defendant challenged the prosecutor's actions, as the certification in support of the warrant contained inaccurate factual statements. *Id.* at 121-22.

The Court began its analysis with the rule that "in determining immunity, we examine 'the nature of the function performed, not the identity of the actor who performed it.'" *Id.* at 127

---

[1] The plaintiffs in that case alleged that the police officers gave false testimony and, as a result, deprived the plaintiffs of the constitutional rights of due process and a fair trial. *Id.* at 328. The fact that the Supreme Court applied absolute witness immunity in such a case is an adequate answer to Plaintiff's contention that absolute witness immunity applies only in defamation cases. (*See* Pl. Br. 26-29.)

(quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The Court found that as to the prosecutor's actions in preparing and filing the two unsworn documents, the prosecutor was acting as an advocate of the state in the judicial process; therefore, her actions were protected by absolute immunity. *Id.* at 129. As to her attestation of the truth of the facts in the certification, the Court found that the prosecutor was not protected by absolute immunity: "Testifying about facts is the function of the witness, not of the lawyer. No matter how brief or succinct it may be, the evidentiary component of an application for an arrest warrant is a distinct and essential predicate for a finding of probable cause." *Id.* at 130-31. The Court found that the prosecutor thus acted as a "complaining witness" who lacked absolute immunity for the falsehoods in the certification. *Id.* at 129, 131.

In *Wyatt v. Cole*, 504 U.S. 158 (1992), the Supreme Court ruled that private defendants were not entitled to any form of immunity in § 1983 claims. In that case, the plaintiff filed a state court complaint in replevin against his former business partner. *Id.* at 159-60. Under state law at the time, the plaintiff could "obtain a court order for seizure of property possessed by another by posting a bond and swearing to a state court that the [plaintiff] was entitled to that property and that the adversary wrongfully took and detain[ed] or wrongfully detain[ed] the property." *Id.* at 160 (internal quotations and citation omitted). State law did not grant any discretion to the state judge; he was forced to issue the order in replevin. *Id.* After a hearing, the state court dismissed the plaintiff's complaint in replevin and ordered the plaintiff to return the confiscated property to the defendant. When the plaintiff refused, the defendant sued the plaintiff in federal court, alleging, among other things, that the state replevin statute was unconstitutional and that the plaintiff and his attorney violated § 1983 by using state law to unconstitutionally deprive him of his property. *Id.* The district court found that the statute was unconstitutional because it violated the constitutional protection of due process; however, it found that the plaintiff and his attorney had qualified immunity "for conduct arising prior to the statute's invalidation." *Id.* at 160.

The Supreme Court reversed. The Court looked first at its "garnishment, prejudgment attachment, and replevin cases," and found that private use of state laws could constitute state action under § 1983. *Id.* at 162 (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 932-35 (1982)). The Court then analogized the claim challenging the replevin action to claims of malicious prosecution and abuse of process. The Court reiterated that in such cases, private party defendants did not have immunity:

> Respondents do not contend that private parties who instituted attachment proceedings and who were subsequently sued for malicious prosecution or abuse of process were entitled to absolute immunity. And with good reason; although public prosecutors and judges were accorded absolute immunity at common law, such protection did not extend to complaining witnesses who, like respondents, set the wheels of government in motion by instigating a legal action.

*Id.* at 164-65 (internal citations omitted). The Court found that while private party defendants at common law had a defense of good faith against claims of malicious prosecution and abuse of process, this defense did not equate to immunity in the § 1983 context. *Id.* at 165 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

### b.          Application to this Case

The district court correctly denied absolute immunity to Defendant. The rationales of absolute immunity and the complaining witness analysis support this result.

### (i).　　Congressional Intent

Both Plaintiff and Defendant agree that Congress did not intend to abrogate the well-established absolute immunity of a witness when it enacted the FDCPA. This Court agrees that nothing in the FDCPA itself or the legislative history of the Act remotely suggests such an abrogation. The question then becomes whether Defendant's conduct falls under the protection of witness immunity.

### (ii).　　The Affidavit as Testimony

This Court agrees with Defendant that testimony presented in the form of an affidavit may be protected under absolute witness immunity. *See Cruz v. Kauai County*, 279 F.3d 1064, 1068 (9th Cir. 2002) ("It is also true that, in this circuit, a person who functions as a witness in an adversarial proceeding to revoke a defendant's bail is to be accorded absolute immunity for her testimony, even if the witness's testimony is provided by way of affidavit." (citation omitted) (emphasis removed)); *Thomason v. SCAN Volunteer Servs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996) ("To the extent Wordlaw and SCAN are sued because Wordlaw made arguably false statements in her affidavit in her role as a witness before the state court, the doctrine of absolute witness immunity applies."); *Giffin v. Summerlin*, 78 F.3d 1227, 1231 (7th Cir. 1996) ("The policy considerations underlying witness immunity for testimony in open court apply with equal force to other forms of testimony such as depositions and affidavits." (citations omitted)). We find that the form of the witness testimony should not affect the status of the immunity attached thereto.

### (iii).　　*Ex Parte* Nonadversarial Proceedings

Plaintiff argues that Defendant should not receive absolute witness immunity for its affidavit because the affidavit was submitted in an *ex parte*, nonadversarial proceeding. Under Ohio law, Defendant can initiate a garnishment proceeding by filing the affidavit described, *supra*, with the state court. Ohio Rev. Code Ann. § 2716.11. The state court then "binds" the garnished property until a hearing so that the garnishee may not use the property. Ohio Rev. Code Ann. § 2716.13. Ohio law does not allow Plaintiff to challenge Defendant's affidavit when it is submitted; it only allows a challenge at a hearing after the property has already been bound. Ohio Rev. Code Ann. § 2716.21. Plaintiff contends that Defendant should not receive absolute immunity for its affidavit because there were no procedural safeguards in insuring the veracity of the affidavit at the time it was submitted, due to the *ex parte*, nonadversarial nature of the initiation of garnishment proceedings under Ohio law.

In support of its contention that the touchstone of witness immunity is the adversarial nature of the proceeding, Plaintiff cites several cases of other circuits. In *Cruz v. Kauai County*, the Ninth Circuit found that a prosecutor's affidavit supporting revocation of the defendant's bail was not entitled to absolute immunity because the affidavit was submitted at an *ex parte* proceeding. 279 F.3d at 1068. While the court also based its decision on the fact that the prosecutor acted as a "complaining witness," it focused its analysis on the fact that the prosecutor "functioned as a witness in an *ex parte* proceeding, at which [the defendant] did not enjoy the protections of the adversary process." *Id.* In contrast, the Ninth Circuit found absolute immunity applicable to an affidavit in *Burns v. County of King* precisely because the proceeding where the affidavit was submitted was adversarial:

> Although the opportunity for cross-examination is absent in this case, since [the defendant's] testimony was presented in the form of an affidavit, [the plaintiff] was nevertheless afforded all the other protections of the adversary process and judicial supervision. . . . [The plaintiff] was entitled to present affidavits and witnesses of his own to refute the statements made by [the defendant]. Under these circumstances,

we conclude that the rationale underlying *Briscoe* requires that [the defendant] be accorded absolute immunity for her statements to the court.

883 F.2d 819, 823 (9th Cir. 1989).

Likewise, the Fifth Circuit found that a report prepared by an expert witness that supported probable cause for an arrest was not entitled to absolute immunity. In *Keko v. Hingle*, the court began its analysis with the notion that the Supreme Court "has subsequently bounded absolute immunity within the precise confines of adversarial judicial proceedings." 318 F.3d 639, 642-43 (5th Cir. 2003) (citations omitted). The court found that absolute immunity did not apply to the expert report submitted in an *ex parte* probable cause hearing: "We decline to extend absolute witness immunity into an arena where the Supreme Court had not found factual testimony to justify such heightened protection." *Id.* at 643. The court expressly based its decision on this fact, and not on the "complaining witness" theory, as it declined to address that factual question on a motion for summary judgment. *Id.*

In *Curtis v. Bembenek*, the Seventh Circuit applied a similar analysis to the testimony of a police officer at two separate hearings. 48 F.3d 281, 285 (7th Cir. 1995). The court found that "the policy considerations for granting absolute immunity to witnesses testifying at trial apply with equal force to witness testimony in adversarial pretrial settings." *Id.* (citation omitted). Because the police officer's testimony at both hearings "was made under oath and subject to cross-examination, [w]e see no principled basis for distinguishing between [adversarial] pretrial proceedings and the trial on the merits in determining whether absolute immunity should be granted to a police officer witness." *Id.* (internal quotations and citation omitted).

In *Sykes v. James*, the Second Circuit found that the petitioner's parole officer was absolutely immune for an affidavit submitted in the petitioner's habeas proceeding. 13 F.3d 515, 521 (2d Cir. 1993). The court stressed that:

A habeas corpus proceeding brought under the pertinent New York statute is surrounded by all the judicial process safeguards. . . . Although cross-examination is not available . . ., all the other protections of the judicial process were afforded to [the petitioner]: the proceeding was adversarial in nature; it was conducted by a judicial officer who rendered the final decision; and it was subject to judicial review. Moreover, the affidavit oath subjected [the parole officer] to the penalty of perjury if the affidavit were false; [the petitioner] had the opportunity to present affidavits of his own; and testimony could have been taken if the judge considered it necessary.

*Id.* The court then distinguished *Malley*, as that case involved an *ex parte* hearing. *Id.* (citing *Malley*, 475 U.S. 335).

While Plaintiff's proposed inquiry of adversarial-nonadversarial for questions of absolute immunity is viscerally appealing, considering the ease of its application and its partial support in the rationale of *Briscoe*, it is ultimately unviable. We agree with the cited cases insofar as they stand for the proposition that witness testimony at an adversarial proceeding is entitled to absolute immunity, because this proposition is supported by the rationale in *Briscoe* that witness immunity, coupled with "the crucible of the judicial process," is the path that would best "lead to the ascertainment of truth." *See Briscoe*, 460 U.S. at 330-34 (internal quotations and citations omitted).

We do not agree, however, that the nonadversarial nature of a proceeding automatically precludes applicability of absolute immunity to witness testimony given at such a proceeding. One glaring example not mentioned by either Plaintiff or Defendant is witness testimony in grand jury proceedings. A grand jury proceeding is the quintessential form of an *ex parte*, nonadversarial proceeding where many of the procedural safeguards of a trial do not exist. Despite this fact, most

circuits, including this circuit, have held that absolute witness immunity applies to witness testimony before a grand jury. *See Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985)); *see also Lyles v. Sparks*, 79 F.3d 372, 378 (4th Cir. 1996); *Frazier v. Bailey*, 957 F.2d 920, 931 n.12 (1st Cir. 1992); *Anthony v. Baker*, 955 F.2d 1395, 1400-01 (10th Cir. 1992); *Little v. City of Seattle*, 863 F.2d 681, 684 (9th Cir. 1989); *Strength v. Hubert*, 854 F.2d 421, 423 (11th Cir. 1988), *overruled on other grounds by Albright v. Oliver*, 510 U.S. 266 (1994); *San Filippo v. U.S. Trust Co., Inc.*, 737 F.2d 246, 254 (2d Cir. 1984); *Kincaid v. Eberle*, 712 F.2d 1023, 1023-24 (7th Cir. 1983); *Briggs v. Goodwin*, 712 F.2d 1444, 1448-49 (D.C. Cir. 1983). Most circuits have found that the *Briscoe* rationale of encouraging truthful testimony at trial applies with equal force to testimony before a grand jury; additionally, several circuits have explained that at common law, a witness is absolutely immune for grand jury testimony. *See, e.g.*, *Kincaid*, 712 F.2d at 1023-24. These cases demonstrate that the adversarial-nonadversarial delineation proposed by Plaintiff is untenable.

The question then becomes what the proper inquiry actually should be. We find that a reviewing court should look at the twin rationales listed in *Briscoe*: insuring that a witness is unafraid of providing testimony, and, when the witness testifies, insuring that the witness is not impermissibly pressured to alter her testimony. 460 U.S. at 333-34. Additionally, a reviewing court should look to the common law to determine whether immunity was available in specific instances.

### (iv).     *Briscoe* **Rationales**

The *Briscoe* Court gave two rationales in support of the common law immunity for witness testimony: (1) "witnesses might be reluctant to come forward to testify" without such immunity; and (2) "once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability." 460 U.S. at 333-34. Neither of these rationales applies to this case.

After obtaining a default judgment on behalf of its client creditor, Defendant sought some mechanism to extract funds from Plaintiff to satisfy this judgment; Defendant chose garnishment. As explained, *supra*, under Ohio law, in order to garnish Plaintiff's property, Defendant was required to file an affidavit which stated that it had a reasonable basis to believe that the property was non-exempt. The focus, then, is on the incentives of Defendant in connection with this affidavit.

With respect to the first rationale, this Court finds it difficult to believe that Defendant would "be reluctant to come forward to testify" without absolute immunity. Defendant is responsible to its client; the client in this case enlisted Defendant to obtain money from Plaintiff. In such circumstances, Defendant is unlikely to disobey its client, nor will Defendant ordinarily refuse to take future creditor clients, without absolute immunity for its affidavit. The lack of absolute immunity may increase Defendant's costs of collecting a debt on behalf of a creditor; Defendant may actually be forced to obey Ohio law and conduct some sort of preliminary investigation of a debtor's assets to determine whether they are exempt. This increase in costs, however, will not be a disincentive for Defendant to pursue actions of garnishment. This cost can simply be passed on to the client; moreover, because all attorney debt collectors would have the same incentive to make this preliminary investigation, Defendant's competitive position would not be harmed by denying absolute immunity for its affidavit. In short, Ohio law requires a procedural safeguard that does increase the cost of pursuing a garnishment action; however, because garnishment actions will remain profitable for the attorney debt collector and its client, this Court has no doubt that the attorney debt collector will continue to bring such actions. Defendant's financial interest will overcome any reluctance to come forward based on the lack of absolute immunity; the same cannot be said, for example, for a witness who has no interest in the outcome of a criminal case.

*Briscoe's* second rationale is equally inapplicable. The Supreme Court in *Briscoe* was cognizant of a witness' fear of being completely candid without absolute immunity; the witness "might be inclined to shade his testimony . . ., to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence." 460 U.S. at 333. Here, the possibility to introduce such variability into Defendant's testimony was limited. The affidavit made one and only one statement: that Defendant had a reasonable basis to believe that certain property of Plaintiff was non-exempt. Of course, Defendant and Plaintiff may disagree as to whether Defendant had such reasonable basis; for example, Plaintiff may claim that a preliminary investigation made by Defendant was insufficient. This, however, is beside the point of *Briscoe*. The focus is on the testimony itself, not on the factual basis of the testimony. With the affidavit, Defendant has no room to shade its testimony, to magnify uncertainties, to distort the evidence; Defendant cannot say that it *might* have a reasonable basis, or that there is a *possibility* that it does not have a reasonable basis. Defendant cannot be equivocal in its affidavit: it states that it either has a reasonable basis or it does not. In other words, Defendant, even if it has an incentive to "play it safe" with ambiguous language because of a lack of absolute immunity, it has no ability to do so, as Defendant must make the definitive statement that it has a reasonable basis. Thus, Defendant will not have to fear "repercussion from a disgruntled opponent over the meaning and implication of every sworn word," (Def. Br. 28), as the battle will not be fought over semantics so much as the substance of the testimony.

The fact that Defendant has to be unequivocal in the affidavit without the protection of absolute immunity will not cause Defendant to cease submitting these affidavits and to stop seeking garnishment actions, as this would be wholly contrary to Defendant's financial interests. Instead, Defendant will have the incentive to conduct some sort of investigation or have some other reasonable basis for its affidavit, as required by Ohio law.

### (v).     Common Law

Most states recognize some cause of action to address a plaintiff's claim of improper garnishment:

> Where an order of attachment or garnishment is improperly obtained or tortiously employed, the defendant in the proceedings may have several modes of obtaining redress for injuries caused thereby. He may proceed on the attachment or garnishment bond, if one has been given, sue for malicious or wrongful attachment or garnishment, or maintain an action for abuse of process or malicious prosecution.[2]

6 Am. Jur. 2d Attachment and Garnishment § 604. "As with the tort of malicious prosecution, two of the necessary elements of a cause of action for wrongful garnishment are (1) an absence of probable cause for such proceeding, and (2) the presence of legal malice, which 'may be inferred entirely from a lack of probable cause.'" *Burshan v. Nat'l Union Fire Ins. Co.*, 805 So.2d 835, 845 (Fla. Dist. Ct. App. 2001) (quoting *Adams v. Whitfield*, 290 So.2d 49, 51 (Fla. 1974)). One court has stated that "[w]hether a garnishment is wrongful depends upon whether the steps taken by the parties seeking the writ comply with the statute authorizing such relief." *Chandler v. Cashway Bldg. Materials, Inc.*, 584 S.W.2d 950, 952 (Tex. App. 1979).

In addition, certain states have explicitly ruled that a cause of action for wrongful garnishment may arise from the garnishment of exempt property. *Owens v. Deutch*, 137 P.2d 181, 185 (Kan. 1943); *Grimestad v. Lofgren*, 117 N.W. 515 (Minn. 1908); *Rice v. Chase*, 9 N.H. 178 (1838). *See generally* 6 Am. Jur. 2d Attachment and Garnishment § 612. One state has ruled that

---

[2]Defendant's argument that Plaintiff cannot maintain a malicious prosecution claim for a writ of garnishment as long as the underlying judgment is valid is not well taken. *See infra*.

a single instance of garnishment of exempt property does not amount to abuse of process, but multiple instances may be sufficient. *Layton v. Chase*, 144 N.W.2d 561, 564 (S.D. 1966).

The case law cited above demonstrates that states have allowed claims where a plaintiff alleges an improper garnishment, whether the claim is one of malicious prosecution, abuse of process, or wrongful garnishment. This includes a claim that the defendant improperly garnished exempt property. The defendant is not entitled to absolute immunity to counter these claims; instead, he has the defenses of probable cause and lack of malice. This common law backdrop generally indicates that Defendant would not be absolutely immune from suit for an improper garnishment.

The question then becomes whether Defendant, although not immune from suit, should receive absolute immunity for the statements he made in the affidavit. From the Supreme Court precedent previously discussed, this Court draws several rules:

(1)     A private witness testifying at trial is absolutely immune for her testimony;

(2)     A private witness testifying at a grand jury is absolutely immune for her testimony;

(3)     A private witness testifying as a complaining witness has no immunity for her testimony.

This Court finds that Defendant is a complaining witness.[3] In *Wyatt*, the Supreme Court ruled that "although public prosecutors and judges were accorded absolute immunity at common law, such protection did not extend to complaining witnesses who, like respondents, set the wheels of government in motion by instigating a legal action." 504 U.S. 164-65 (citation omitted). Here, Defendant instigated the legal action of garnishment and "set the wheels of government in motion." In order to do so, Defendant swore to the truth of a certain set of facts, *i.e.*, it had reasonable belief that the target property of the garnishment was non-exempt. Because of this affidavit, the state court then bound Plaintiff's bank account. Defendant's garnishment action is the result of Defendant's "complaint" that Plaintiff had non-exempt property, and that Plaintiff thus owed this non-exempt property to Defendant.

From this Court's perspective, Defendant's actions mirror the instigation of an action in replevin. As explained in *Wyatt*, the Supreme Court had grouped together replevin and garnishment actions in the § 1983 context, and with good reason. The two actions are quite similar: in both claims, the plaintiff believes the defendant holds property to which the plaintiff is entitled; in both claims, the plaintiff files an affidavit that swears to his belief; in both claims, the court then dispossesses the defendant of the property or otherwise limits the defendant's use; and in both claims, the defendant then has the right to a hearing to prove that the property properly belongs to him. In *Wyatt*, the Supreme Court noted that a private defendant was not immune from suit for instigating an improper replevin action under a claim of malicious prosecution or abuse of process; the defendant did, however, have the defense of good faith. 504 U.S. 164-65. This Court sees no principled distinction that justifies differing treatment for an improper garnishment action.

Defendant may argue that an action in replevin is a prejudgment action, whereas a garnishment action is a postjudgment action. This is a trivial distinction. The fact that Defendant obtained an underlying judgment in support of the garnishment is irrelevant; the validity of the

---

[3]In support of its claim of absolute immunity, Defendant cites *Etapa v. Asset Acceptance Corp.*, 373 F. Supp. 2d 687 (E.D. Ky. 2004), and *Beck v. Codilis*, No. 4:99 CV 485-RH, 2000 WL 34490402 (N.D. Fla. Dec. 27, 2000), two cases that specifically addressed false affidavits with respect to FDCPA claims. Because neither case addresses the complaining witness analysis, they are unpersuasive in the present factual context.

underlying judgment does not extend to an ancillary action. This Court looks only to the garnishment action itself to determine whether that claim was properly made.

Defendant argues that the complaining witness analysis does not apply because the complaining witness analysis deals only with arrest warrants, and no analogy can be drawn to this case because the probable cause requirement for arrest warrants derives from the Constitution, whereas Plaintiff does not and cannot make the same constitutional claim for an improper garnishment. While the Supreme Court used the complaining witness analysis in *Malley* in its treatment of a police officer's statement to support probable cause for an arrest warrant, the analysis derives from the common law tort of malicious prosecution. *Malley*, 475 U.S. at 341 n.3. If a private defendant instituted a baseless civil suit without probable cause and with malice against the plaintiff, then the plaintiff would have a cause of action against the defendant based not in the Constitution but in the common law, and the defendant would be a complaining witness without absolute immunity. Likewise, if a private defendant instituted an improper garnishment action without probable cause and with malice, the plaintiff garnishee would have a cause of action at common law. *See supra*. Thus, the complaining witness analysis applies outside of the constitutional context.

Defendant next argues that "no analogy can be drawn between a claim for malicious prosecution and a claim that an affidavit in aid of garnishment contains a false statement." (Def. Reply Br. 7.) This Court disagrees. As explained above, a plaintiff garnishee can use malicious prosecution as a claim to remedy an improper garnishment, so malicious prosecution is not just analogously on point; it is directly on point. This is logical, as malicious prosecution is defined as "a suit for damages brought by one against whom a criminal prosecution, civil suit, or other legal proceeding has been instituted maliciously and without probable cause, after the termination of the former proceedings in favor of the defendant." 52 Am. Jur. 2d Malicious Prosecution § 1. Here, Defendant instituted a garnishment proceeding against Plaintiff, and the proceeding ended in favor of Plaintiff. Plaintiff claims the proceeding was instituted maliciously and without probable cause because Defendant did not have a reasonable basis to believe that Plaintiff's property was non-exempt. Plaintiff could thus sufficiently state a claim of malicious prosecution to which Defendant could not assert a defense of absolute immunity. *Wyatt*, 504 U.S. at 164.

Defendant argues that as long as the underlying judgment is valid, there can be no claim of malicious prosecution with respect to a garnishment action. None of the cases to which Defendant cites support this contention. In *Vanover v. Cook*, the court found that the plaintiff had failed to state a malicious prosecution claim, because no judgment had been entered in the plaintiff's favor. 260 F.3d 1182, 1189-90 (10th Cir. 2001). It is undisputed in the instant case that the state court dismissed the garnishment of Plaintiff's bank account. *Novick v. Becker* actually supports Plaintiff's position: the court found that "the detention of the funds of a party by garnishment is such interference with his property as to sustain an action of malicious prosecution." 90 N.W.2d 620, 622 (Wis. 1958). The court ultimately found that the plaintiff did not properly allege lack of probable cause on the part of the defendant. *Id.* at 623. *Duckworth v. Boykin* dealt with a case where the plaintiff in the malicious prosecution suit "made an unsuccessful attempt to obtain a judgment that the money raised by the garnishment was exempt from that process." 41 S.E. 62, 62 (Ga. 1902). In other words, the garnishment action was good, and thus the malicious prosecution claim failed, because the plaintiff failed to show that the garnished property was exempt. Here, Plaintiff has shown and the state court has ruled that the garnished property was exempt. *Salsgiver v. Standard Oil Co.* was a case where the plaintiff failed to prove malice; it did not state that a plaintiff could never maintain a malicious prosecution claim if there was a valid underlying judgment. No. 77 C.A. 66, 1978 WL 214778 (Ohio Ct. App. Jan. 17, 1978).

The only case that possibly lends support to Defendant's contention is *Delk v. Colonial Fin. Co.*, 194 N.E.2d 885 (Ohio Ct. App. 1963). There, the state court reasoned that "[i]t is obvious that

the existence of defendant's valid judgment provided complete probable cause for instituting garnishment proceedings." *Id.* at 888. This Court agrees that generally, when a creditor has obtained a judgment, she may then seek garnishment; however, this general probable cause does not equate to the specific probable cause requirement of Ohio law that Defendant have a reasonable basis to believe that the property garnished is non-exempt. In other words, it is no answer that Plaintiff owes Defendant money, and that Plaintiff owns property; Defendant must show that it reasonably believes the garnished property is non-exempt. Moreover, *Delk* could not possibly encompass this specific form of probable cause, as it was decided well before the existence of the Ohio statutory requirement of the affidavit. While the language in *Delk* was applicable to the days when the creditor could garnish property without investigating the nature of the property, those days are no more in Ohio.

Defendant's actions could properly be characterized as malicious prosecution. As a result, it is a complaining witness without absolute immunity. The fact that Plaintiff is suing under the FDCPA and not the common law claim does not affect the immunity status of Defendant. As the Supreme Court stated in *Kalina*, "in determining immunity, we examine the nature of the function performed." 522 U.S. at 127 (internal quotations and citation omitted). In this case, Defendant functioned as a complaining witness, so it may not assert absolute immunity against any claim in connection with this role.

From a practical perspective, treating Defendant as a complaining witness without immunity simply makes sense. The Court reserves absolute immunity for individuals when they functionally serve as "integral parts of the judicial process," such as judges, advocates, and witnesses in their ordinary judicial roles. *Briscoe*, 460 U.S. at 335. The purpose of this immunity is to preserve the integrity of our judicial system, not to assist a self-interested party who allegedly lies in an affidavit to initiate a garnishment proceeding.

## III. CONCLUSION

For the foregoing reasons, this Court **AFFIRMS** the order of the district court.