*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

ALICE G. KELLY; NORMAN P. KELLY,

*Plaintiffs-Appellees,*

*v.*

No. 05-3830

GREAT SENECA FINANCIAL CORP.; JAVITCH, BLOCK
& RATHBONE,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00615—Sandra S. Beckwith, Chief District Judge.

Argued: April 27, 2006

Decided and Filed: May 17, 2006

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** Michael D. Slodov, JAVITCH, BLOCK & RATHBONE, Cleveland, Ohio, for
Appellants. Stephen R. Felson, Cincinnati, Ohio, for Appellees. **ON BRIEF:** Michael D. Slodov,
JAVITCH, BLOCK & RATHBONE, Cleveland, Ohio, for Appellants. Stephen R. Felson,
Cincinnati, Ohio, Steven C. Shane, Bellevue, Kentucky, for Appellees.

_____

**OPINION**

_____

ROGERS, Circuit Judge. The defendants in this interlocutory appeal ask us to review the
district court's nonfinal order denying them, among other things, the defense of absolute witness and
advocacy immunity in an action concerning unfair debt-collection practices. The preliminary issue
in this case is whether this court has appellate jurisdiction to entertain the defendants' interlocutory
appeal under the collateral order doctrine. Only five days after this court held in another case that
we have jurisdiction to hear interlocutory appeals concerning witness immunity, the Supreme Court
of the United States decided *Will v. Hallock*, __ U.S. __, 126 S. Ct. 952 (2006), which clarified when
appellate courts have jurisdiction under the collateral order doctrine. In light of *Will*, we dismiss
this appeal for lack of jurisdiction. We also decline to grant mandamus relief.

1

# I.

In September of 2003, defendant Javitch, Block & Rathbone (Javitch) filed in Ohio state court a "Complaint for Money" to collect a debt that the plaintiffs Alice and Norman Kelly allegedly owed defendant Great Seneca Financial Corporation (Seneca). When the Kellys requested discovery, Seneca voluntarily dismissed its complaint without prejudice. In 2004, the Kellys brought suit against Seneca and Javitch in federal district court, alleging violations of several provisions of the Fair Debt Collection Practices Act (FDCPA) and the Ohio Consumer Sales Practices Act (OCSPA). According to the Kellys, the $5,389.15 demanded in Seneca's complaint "was significantly in excess of the amount of money [the Kellys] may have owed or [Seneca] was legally entitled to collect." J.A. 10. The Kellys further claimed that Seneca and Javitch filed the debt-collection complaint "knowing that [they] did not have any means of proving that such debt was owed" and that a "bogus" account statement was attached to the complaint in an attempt to prove the debt. J.A. 10.

Seneca and Javitch responded to the Kellys' complaint by filing a motion to dismiss. They argued that (1) they are absolutely immune from suit for behavior that occurs during the course of litigation, (2) the filing of the Complaint for Money is protected by both the First Amendment and the *Noerr-Pennington* doctrine, (3) application of the FDCPA to their case exceeds Congress's power under the Commerce Clause, and (4) the Kellys failed to state a claim under several provisions of the FDCPA. The district court denied Seneca and Javitch's motion to dismiss.[1]

Seneca and Javitch now challenge the denial of absolute immunity pursuant to the collateral order doctrine in this interlocutory appeal. They also argue that this court should exercise pendant appellate jurisdiction to consider their defenses under the First Amendment, the *Noerr-Pennington* doctrine, and the Commerce Clause.

After the parties submitted their briefs in this case, this court decided *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432, 434 (6th Cir. 2006). *Todd* was a strikingly similar case. The plaintiff was a debtor against whom the defendant law firm, on behalf of the creditor, had filed a complaint to collect a debt. *See Todd*, 434 F.3d at 435. The plaintiff then sued the law firm that filed the complaint and alleged violations of the FDCPA. *See id.* at 434. The plaintiff moved to dismiss on grounds of, among other things, absolute immunity. *See id.* The district court denied the motion to dismiss, and the defendant then filed a motion for interlocutory appeal under the collateral order doctrine. We held that "this Court reviews the collateral order of the district court denying Defendant absolute immunity." *See id.*; *accord Paine v. City of Lompoc*, 265 F.3d 975, 981 (9th Cir. 2001). On the merits, we held that the law firm was not entitled to absolute immunity.

Five days after we decided *Todd*, the Supreme Court of the United States unanimously decided *Will v. Hallock*, __ U.S. __, 126 S. Ct. 952 (2006), which made clear the limited scope of the collateral order doctrine. In *Will*, the Supreme Court held that a party cannot take an interlocutory appeal from a district court's refusal to apply the Federal Tort Claims Act's judgment bar. We requested that the parties be prepared to discuss the effect, if any, of *Will* on our jurisdiction over this interlocutory appeal. At oral argument, Seneca and Javitch requested that we grant mandamus relief if we determine that we have no jurisdiction under the collateral order doctrine.

---

[1]The district court did dismiss the Kellys' claim under § 1692(d) of the FDCPA. The district court dismissed this claim because merely filing a complaint in an appropriate venue, as alleged in the Kellys' complaint, was not sufficient to demonstrate that Seneca and Javitch had "harass[ed], oppress[ed], or abuse[d]" the Kellys. J.A. 36.

## II.

"An appellate court has a duty to consider sua sponte whether appellate jurisdiction is properly invoked." *Mattingly v. Farmers State Bank*, 153 F.3d 336, 336 (6th Cir. 1998) (per curiam). Despite the parties' agreement at oral argument that we should address the merits of this interlocutory appeal, "[s]ubject matter jurisdiction cannot be conferred on federal courts by consent of the parties." *Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 257 (6th Cir. 1994). Our review of *Will v. Hallock* convinces us that we must dismiss this interlocutory appeal for lack of jurisdiction.

Because the Supreme Court's opinion in *Will* controls the jurisdictional question in this case, we describe the case in detail. In *Will*, the Supreme Court held that a party cannot take an interlocutory appeal from a district court's refusal to apply the Federal Tort Claims Act's judgment bar. The Supreme Court began its analysis by noting that federal appellate courts have jurisdiction over only "final decisions of the district courts," *see* 28 U.S.C. § 1291, and "'a narrow class of decisions that do not terminate the litigation,' but are sufficiently important and collateral to the merits that they should 'nonetheless be treated as final.'" *Will*, 126 S. Ct. at 956 (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)). To determine which decisions fall within this "narrow class of decisions," courts turn to the collateral order doctrine, identified in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949). *See id.* at 957. Orders qualify only if they conclusively decide a disputed issue that is completely independent from the merits of the case and effectively unreviewable on appeal after a final order. *See id.* (citing *P. R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

The Supreme Court emphasized the "modest scope" of the collateral order doctrine. *Id.* at 958. The Court stated that the collateral order doctrine does not permit interlocutory appeal of just "any order denying a claim of [a] right to prevail without trial." *Id.* at 958. The Court explained that the assertion of a right not to stand trial is a necessary, but not a sufficient, condition for interlocutory review. *See id.* at 958-60. Consequently, "only *some* orders denying an asserted right to avoid the burdens of trial qualify . . . as orders that cannot be reviewed 'effectively' after a conventional final judgment." *Id.* at 958 (emphasis added). In addition to violating an asserted right not to stand trial, the challenged order must "imperil a substantial public interest." *Id.* at 959.

The Court identified four instances in which it had recognized that interlocutory appeals were proper, and the Court identified the substantial public interest in each of those four cases that the immediate appeal protects:

(1)    Immediate appeal from denials of presidential immunity protects "compelling public ends rooted in . . . the separation of powers";

(2)    Immediate appeal from denials of qualified official immunity protects avoidance of disruption of discretionary government functions;

(3)    Immediate appeal from denials of sovereign immunity protects "a State's dignitary interests"; and

(4)    Immediate appeal from denials of a double jeopardy defense protects the individual from the "superior position" of the government.

*Id.* at 959. Applying this additional "substantial public interest" requirement to the case before it, the Supreme Court held that a district court's refusal to apply the judgment bar of the Federal Tort Claims Act is not open to interlocutory appeal. *See id.* at 956, 959-61.

A.       *Witness Immunity*

Although Seneca and Javitch have invoked their right not to stand trial under the common-law doctrine of absolute witness immunity, *see Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999), they have failed to demonstrate how any substantial public interest will be imperiled by delaying their appeal until after the district court enters a final order. Their first argument—that *Will* stated that collateral appeal could be had from denials of all forms of absolute immunity—is not well taken. The Supreme Court stated only that it had permitted "immediate appeal of a denial of absolute Presidential immunity," and it referred to *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), to demonstrate that collateral appeal from a denial of absolute Presidential immunity protected "compelling public ends rooted in the separation of powers." *Will*, 126 S. Ct. at 959 (citation omitted). The Supreme Court did not say that denials of all forms of absolute immunity, regardless of the function that the invoking litigant served, were immediately appealable.

Seneca and Javitch next argue that a substantial public interest undergirds witness immunity and therefore requires interlocutory appeal from denials of witness immunity. Having a substantial public interest in the immunity itself, however, does not mean that there is a substantial public interest in an interlocutory appeal. Distinguishing between the purpose of the defense/immunity and the purpose of collateral appeal ensures that we keep the "small class" of orders reviewable on interlocutory appeal "narrow and selective in its membership." *Will*, 126 S. Ct. at 958.

Absolute witness immunity strengthens the substantial public interest of having witnesses come forward and testify truthfully, *see Paine*, 265 F.3d at 982, but lack of interlocutory appeal from denials of witness immunity does not "imperil [this] substantial public interest," *Will*, 126 S. Ct. at 959. Witness immunity, as in this and most cases, protects private individuals from being subject to suit and from liability, and most of these individuals will appear as witnesses, at most, only a few times in their lives. Moreover, witness immunity concerns only statements made during trial and therefore reaches very limited conduct. Permitting suit to continue after a district court has denied a motion for witness immunity will not have any effect on the testimony already given, the witness' conduct in future proceedings (other than, perhaps, to impress upon them the importance of telling the truth), or on the public fisc. Therefore, lack of interlocutory appeal will not threaten a substantial public interest.

In contrast, interlocutory appeal from denials of official, sovereign, and Presidential immunity protects substantial public interests of a "high order." When these immunities are at issue, denial of interlocutory appeal creates an ongoing injury distinct from the official or State's right not to stand trial. Official immunity seeks to protect the ability of an official to exercise discretion in accomplishing public tasks and to prevent the official from spending time in court defending actions that are reasonably thought to be legal. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985). Without interlocutory appeal from district court denials of immunity, the official, by spending more time than necessary to defend himself or herself in an action, would spend less time on the tasks for which he or she was hired and cost the public additional money in defending a suit that should have been dismissed. The lack of speedy resolution of the claim also threatens the official's decisiveness in taking action while the action is proceeding to trial. Similarly, requiring a State to appear in federal court and undergo trial when it is entitled to sovereign immunity (even if it is later shielded on the merits) harms the State's dignitary interests. Lack of interlocutory appeal would cause a continuing injury to the State's dignitary interests every additional day that it must remain in federal court. Absolute Presidential immunity protects a substantial public interest in the separation of powers, and the injury continues every day that the President must remain in court because the judiciary is overseeing the actions of the nation's chief executive officer. Interlocutory appeal of denials of witness immunity, in contrast, protects no substantial public interest of a comparable "high order" as those identified in *Will*.

B.        *Advocacy Immunity*

We are also unpersuaded by the arguments of Seneca and Javitch that advocacy immunity protects them from suit and that interlocutory appeal would further a substantial public interest in judicial integrity and administration. First, although the Supreme Court has indicated in passing that the English common law provided private attorneys with some form of immunity, the Supreme Court has described the nature of that immunity only as protection from damages liability. For instance, in *Burns v. Reed*, 500 U.S. 478, 489-90 (1991), the Court stated, "Like witnesses, prosecutors and other lawyers were absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding), and also for eliciting false and defamatory testimony from witnesses." In *Briscoe v. LaHue*, 460 U.S. 325 (1983), the Court noted once that "[t]he immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law," *id.* at 330-31, and later that "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process," *id.* at 335. These cases do not state that private attorneys enjoy immunity from suit, and the defendants have not pointed us to any authority demonstrating that advocacy immunity protects private attorneys from standing trial.

It is also not enough after *Will* that the nonliability that Seneca and Javitch invoke is described as an "immunity." For example, the Fourth Circuit has recently ruled that a State cannot immediately appeal a denial of "*Parker* immunity" or "state action antitrust immunity" in an antitrust action against the State because determining whether "*Parker* protection" was proper would force appellate courts to consider prematurely the merits and because the immunity issue is fully reviewable on appeal. *S.C. State Bd. of Dentistry v. F.T.C.*, __ F.3d __, 2006 WL 1134136 (4th Cir. 2006); *see also Surgical Care Ctr. of Hammond, L.C. v. Hosp. Serv. Dist. No. 1*, 171 F.3d 231, 234 (5th Cir. 1999) (en banc) ("*Parker* immunity is an inapt description, for its parentage differs from the qualified and absolute immunities of public officials. . . . While thus a convenient shorthand, '*Parker* immunity' is more accurately a strict standard for locating the reach of the Sherman Act than the judicial creation of a defense to liability for its violation."); *Digital Equip.*, 511 U.S. at 869 ("[D]espite Digital's position that it holds a 'right not to stand trial' . . . rights under private settlement agreements can be adequately vindicated on appeal from final judgment."). Moreover, although the privilege of a spouse not to testify or not to have his spouse testify is referred to as "spousal immunity privilege," *see, e.g.*, *Engberg v. Wyoming*, 265 F.3d 1109, 1121 (10th Cir. 2001), we have uncovered no instances where an appellate court entertained an interlocutory appeal from the denial of spousal immunity. The nature of the protection is what is important, not the loose ability of an attorney to use the term "immunity."

Second, even if we assume that advocacy immunity protects attorneys from the burdens of trial, the asserted interest that interlocutory appeal will allegedly protect—"preserving the integrity of the judicial process, and the free and unfettered administration of justice"—is not of comparable "high order" to those interests identified in *Will*. The resolution of a trial court's error following a final order will not cause lawyers to act less zealously, the administration of justice to come to a grinding halt, or judicial integrity to erode. Despite lawyers' being subject to malpractice claims and professional discipline, we have not taken interlocutory appeals from decisions denying lawyers summary defenses in those cases, and Lady Justice's balance has yet to fall. Ultimately, Seneca and Javitch have made no argument that interlocutory appeal is required to protect the substantial interest supporting advocacy immunity, and we are unable to discern how the interest in judicial integrity and administration is threatened simply because a lawyer cannot obtain an immediate appeal. Therefore, we have no jurisdiction to consider this interlocutory appeal under the collateral order doctrine.

## III.

Finally, mandamus relief is not warranted in this case. The Supreme Court has held that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). As we held recently in *United States v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 473 (6th Cir. 2006):

> The decision whether to grant mandamus relief involves analysis of five factors: (1) the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) the district court's order is clearly erroneous as a matter of law; (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules; [and] (5) the district court's order raises new and important problems, or issues of first impression.

Seneca and Javitch are not entitled to mandamus relief under this analysis. First, as we held in determining that interlocutory appeal is not warranted, direct appeal following a final order will protect the substantial public interests that undergird witness and advocacy immunity. Second, considering that the district court's denial of immunity is at least facially consistent with our opinion in *Todd*, the district court's order is not clearly erroneous, does not demonstrate an oft-repeated error, does not demonstrate disregard for federal law or procedure, and does not raise issues on the merits so new and important as to warrant mandamus relief.

The only factor that arguably favors the defendants is that their right to be free from the burdens of trial would be affected if they have to stand trial. But the mere fact that the defendants must proceed to trial is not enough to warrant mandamus relief. If it were otherwise, this court would have to entertain writs of mandamus whenever a district court denied any defense contained in a party's motion to dismiss. Whatever prejudice that the defendants suffer in having to stand trial is outweighed by the other four factors that counsel against our granting this extraordinary relief. Therefore, we deny mandamus relief.

Because we have no appellate jurisdiction over this interlocutory appeal and because we deny mandamus relief, we cannot exercise pendant appellate jurisdiction to decide the validity of the defendants' other asserted defenses.

## IV.

For the foregoing reasons, we dismiss this interlocutory appeal for lack of jurisdiction.