Norma LEE, Plaintiff,

v.

JAVITCH, BLOCK & RATHBONE, LLP, et al., Defendants.

No. 1:06–cv–585.

United States District Court, S.D. Ohio, Western Division.

Nov. 7, 2007.

Stephen R. Felson, Cincinnati, OH, Steven Charles Shane, Bellevue, KY, for Plaintiff.

Michael D. Slodov, Javitch, Block & Rathbone LLP, Cleveland, OH, Vincent P. Antaki, Reminger & Reminger Co. LPA, Cincinnati, OH, for Defendants.

## ORDER

SANDRA S. BECKWITH, Chief Judge.

Before the Court are several motions. Defendants seek summary judgment on all of Plaintiff's claims. (Doc. 49) Plaintiff opposes that motion (Doc. 69) and Defendant has replied. (Doc. 72) Plaintiff has filed a motion seeking partial summary judgment on liability only (Doc. 53), which Defendant opposes (Doc. 61), and to which Plaintiff has replied. (Doc. 71) Defendant has filed a motion to strike an affidavit attached to Plaintiff's partial summary judgment motion. (Doc. 58) The motion to strike has been fully briefed. (Docs. 59, 65 and 68)

Plaintiff filed her motion for class certification (Doc. 42) shortly before the summary judgment motions were filed. Defendants oppose class certification (Doc. 52), and Plaintiff has replied and filed two supporting affidavits (Docs. 60, 66 and 67).

■ The Court has discretion to address the parties' summary judgment motions prior to determining the appropriateness of class certification. See, e.g., *Thompson v. County of Medina, Ohio,* 29 F.3d 238, 240–41 (6th Cir.1994). The Court concludes that resolving the dispositive motions first will assist in a more efficient resolution of the issues raised in all pending motions.

## FACTUAL BACKGROUND

Someone named Norma Lee, who claimed to live at 10947 Birchridge Avenue, Cincinnati, Ohio 45240, signed an application for an "Aspire Diamond Visa" credit card on October 15, 2000. According to records of Columbus Bank & Trust Company, the issuer of the credit card, some charges were made and payments were received on that account. But by September 2002, the balance shown on the statement was $2,795.75, and the payments had stopped. (See Doc. 49, Exhibits B–1 and B–2) The record is silent concerning any efforts the Bank may have made to collect the past due amount.

Midland Funding LLC is a company that buys old or defaulted debts from other creditors, typically for significantly less than the face amount, a discount that probably reflects the uncertainty of collection. At some point, Midland Funding acquired this credit card account from Columbus B & T. On February 13, 2006, Midland referred the debt to Defendant Javitch, Block & Rathbone ("JB & R"), a law firm that regularly engages in debt collection for its clients. (See Doc. 49, Exhibit C, JB & R's confidential client history notes, reflecting that a JB & R file in the name of "Norma J. Lee" with the Birchridge address was opened on 2/13/2006.)

JB & R maintains standard procedures governing its debt collection practices. JB & R's partner Joel Rathbone designed and created a proprietary software program that permits JB & R staff to create a detailed history of each client file from the day it is received. (Doc. 49, Exhibit 5, Rathbone Decl., ¶¶ 9–13) JB & R typically receives file information from its clients in electronic form, which is uploaded directly to JB & R's database, while a hard copy is kept separately. Firm employees review all new files before the information is imported into the firm's database, to look for "possible statute of limitation issues, possible corrupt or incongruous data, and potential existing identity information on the same debtor contained in the system." (Rathbone Dec. 1 20) Any anomalous data is flagged for further review. The data

received typically includes information about the original creditor, the debtor's last known address, Social Security number, birthdate, and may reveal if the debtor is employed or receiving Social Security benefits. Firm procedures require the electronic file to be continuously and contemporaneously updated to reflect all information received on that file.

According to JB & R's file history, a JB & R employee ordered a credit report on Norma Lee on February 16, 2006. JB & R received the report the next day, and it listed 1317 Landis Lane as Lee's current address. 10947 Birchridge Drive was listed as a "former" address. The credit report states that the Midland debt was "verified" in February 2006, listed three other collection matters, and identified four "trades" accounts. All four are listed as "closed," with one closed by the credit grantor with a balance shown. (Doc. 49, Exhibit F)

Once the client data is imported into the firm's database, the software system automatically generates an FDCPA-required debt validation notice.[1] JB & R's notice was sent to Norma Lee at the Birchridge address on February 16, prior to receipt of the credit report. According to the file history, the validation notice was not returned as undeliverable, and no response or objection to the notice was received within the statutory 30–day period. (Rathbone Dec. ¶ 28)

JB & R uses an automated telephone dialer program that places calls to a debtor's home number if available. Rathbone describes this automated dialer as programmed to call debtors "in accordance with call patterns approved by the managing partners, in an effort to establish contact with the debtor and to attempt to arrange voluntary payment. If a call is answered, it is connected to a call center desk and routed to the collection staff personnel responsible for the file." (Rathbone Dec. ¶ 32) JB & R's file history lists over fifty calls to a telephone number that JB & R obtained, and that no one responded to any of these calls. Plaintiff admitted that this phone number was hers during this time. (Doc. 49, Exhibit G, Plaintiff's Responses to Defendants' Requests for Admissions.)

On March 8, 2006, Lee's file was placed on what Rathbone calls a "suit approval review list." JB & R procedures provide that if the debtor cannot be contacted and no satisfactory payment arrangements are made, the file is reviewed for a possible collection lawsuit. The decision to file suit is based on "a combination of client work standards and the firm's standards, and all suit requests are reviewed by a supervisor or manager for approval." (Rathbone Dec. ¶37) JB & R paralegals prepare the pleadings by inputting information into program templates. The program calculates appropriate follow-up dates and deadlines. A suit against Lee was approved on March 25, 2006.

JB & R attorneys rotate the responsibility for signing all legal pleadings filed by the firm's collection group. These "signing attorneys" rely almost exclusively on the firm's systems, processes, and trained staff to ensure that the pleadings are appropriate and accurate. In Lee's case, JB & R attorney Brian Block signed the collection complaint which was filed on April 11, 2006 in the Hamilton County Municipal Court. (Doc. 49, Exhibit 14) Certified mail service of the complaint to the Birchridge Drive address was returned "unclaimed" to the court, and regular mail service to the same address was sent on April 24. JB & R obtained a default judgment on June 14.

---

1. See 15 U.S.C. § 1692g.

Rathbone testified that once a judgment is obtained, firm employees contact area banks to see if the judgment debtor has an account at the bank. He described an automated telephone system that can confirm if an account is open that matches the debtor's name and Social Security number, but apparently without revealing additional details about the account. (See Rathbone Deposition pp. 119–120.) On June 26, a JB & R "collector" called National City Bank, who confirmed that "Norma Lee" had an account at that bank. JB & R then prepared a non-wage garnishment affidavit naming NCB as the garnishee. The firm's rotating process for attorneys signing legal pleadings includes the responsibility for executing garnishment affidavits. In Lee's case, attorney Victor Javitch was "on duty" and signed the garnishment affidavit on June 28, 2006.

Non-wage garnishment is governed by Ohio statutes. Ohio Rev.Code 2716.11 requires a judgment creditor or its attorney to execute an affidavit stating:

(A) The name of the judgment debtor whose property, other than personal earnings, the judgment creditor seeks to garnish;

(B) That the affiant has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States;

(C) A description of the property.

Javitch signed an affidavit prepared by JB & R which stated that he

… has a reasonable basis to believe that the person named in the affidavit as the garnishee may have property, other than personal earnings, of the judgment debtor that is not exempt under the law of this state or the United States. The property is described as money, property or credits. The affiant's basis for believing the property is not exempt, is not based on knowledge of circumstances or facts regarding the judgment debtor's account, and is not the result of a legal assessment of the judgment debtor's right to seek/claim an exemption, and may be based in whole or in part on unverified assumptions.

(Doc. 1, Exhibit A) The affidavit was then filed in the municipal court action. A court garnishment order was issued, and NCB responded on July 17 by depositing $493.22 with the court. Plaintiff discovered the garnishment a few days later and contacted JB & R on July 24, stating the money in her account was from Social Security disability payments. These funds are exempt from execution under federal and state law. Lee's attorney then contacted JB & R stating that the collection complaint and notice of the garnishment had been sent to an old address, and that the garnished funds were exempt. JB & R agreed to release the garnishment. Two weeks later, Lee's attorney informed JB & R that a settlement of the collection lawsuit was impossible because JB & R had sued the wrong person. Lee filed an affidavit in the state court action stating she did not believe "that she ever applied for, obtained or utilized a credit card issued by Aspire Visa and/or, in the alternative, that she is not the Norma Lee associated with this account." (Doc. 49, Exhibit 16) The default judgment was vacated by agreement, and JB & R then dismissed the lawsuit. This action followed.

**PROCEDURAL HISTORY**

Plaintiff's complaint alleges that JB & R's garnishment affidavit violates the Federal Fair Debt Collection Practices Act, specifically 15 U.S.C. § 1692e and e(10), prohibiting false, deceptive or misleading representations, and 15 U.S.C. § 1692f, prohibiting use of unfair or unconscionable means to collect a debt. Plaintiff alleges

that the garnishment affidavit signed by Javitch violated the statute because Javitch had no reasonable basis to believe that she may have had non-exempt funds.

Defendants answered the complaint and filed a Rule 12(c) motion for judgment on the pleadings. (Doc. 13) This Court denied that motion in its April 17 Order (Doc. 29), finding that if Javitch had no basis, or an unreasonable basis, to believe that non-exempt assets may have been in Lee's bank account, his affidavit could be actionable under the FDCPA. The Court noted certain dicta from the Sixth Circuit's decision in *Todd v. Weltman, Weinberg & Reis Co.*, 434 F.3d 432 (6th Cir.2006), a case also arising from an Ohio garnishment of a debtor's exempt funds. In an interlocutory appeal, the Sixth Circuit affirmed the district court's order denying the defendant attorneys immunity from FDCPA liability. In analyzing why immunity did not apply to an attorney's execution of a garnishment affidavit, the Court noted: "Defendant may actually be forced to obey Ohio law and conduct some sort of preliminary investigation of a debtor's assets to determine whether they are exempt." *Id.* at 442. The Sixth Circuit concluded it was proper to deny immunity in these circumstances because the person signing an affidavit "... will have the incentive to conduct some sort of investigation or have some other reasonable basis for its affidavit, as required by Ohio law." *Id.* While these statements are clearly dicta on the immunity question actually decided, this Court believes they accurately reflect Ohio law.

### The Summary Judgment Motions

Lee's motion for partial summary judgment (Doc. 53) argues that the Javitch affidavit is false, misleading and/or deceptive because Javitch had no idea what funds were in Plaintiff's account. She also argues that the affidavit is internally inconsistent, because a "reasonable basis" for a lawyer's belief cannot be "unverified assumptions" as the affidavit states. Plaintiff argues the affidavit is unfair under Section 1692f for the same reasons. Plaintiff does **not** allege that the garnishment of her exempt funds itself violated the FDCPA. (See Doc. 53, p. 3, and Doc. 69 at p. 13.) She therefore argues that the statute's "bona fide error" defense does not apply to the intentional conduct of executing the affidavit.

Defendants argue that Javitch had a "reasonable basis" to believe that non-exempt assets may have been in Lee's bank account. His basis for that belief is his firm's policies and procedures governing its retail collection legal practice. JB & R contends that it is reasonable for its lawyers to rely on those policies and procedures when they sign Ohio garnishment affidavits. These procedures include screening out any debtor who is 65 or older and lacks known employment or real property. JB & R collection staff are trained to look for three primary assets: real estate, wages, and non-exempt funds. The "best way" to look for these assets is to talk to the debtor. Absent that, JB & R staff search county records, employment verification databases, and credit reports. (Rathbone Dec. ¶ 42) The firm operates on the "rebuttable presumption that judgment debtors below the age of retirement who are employed or own real estate and have active trade lines on their credit report are unlikely to be recipients of only exempt income ... The presumption may be rebutted in any case where a debtor asserts an exemption and provides requested information or where third party information leads us to believe otherwise." (Rathbone Dec. ¶ 43) Firm employees are trained to look for active trade lines on a debtor's credit report, to search public databases to locate assets or property, and to verify employment if possible. The collectors have discretion, however, to decide

how extensive a search to make; the only required search is for real estate. (Rathbone Deposition pp. 82–83) The firm and its clients have no incentive to pursue litigation or garnishment against an uncollectible debtor. (See Doc. 49 at p. 15)

JB & R describes the last sentence of the garnishment affidavit quoted above as the firm's response to court decisions in FDCPA cases involving Ohio garnishments.[2] JB & R attorneys crafted and added this disclaimer "to dispel any notion on the part of judgment debtors and courts that an attorney had actual knowledge of the exempt status of funds *on* deposit in a garnishee's bank account, and to dispel the idea that because the affidavit was signed by a lawyer that it reflected an assessment of the debtor's right to claim or seek an exemption, and that Defendants' basis for believing the property is not exempt may have relied on assumptions." (Doc. 49 at p. 19) For that reason, JB & R contends the affidavit is not misleading or deceptive, as it plainly discloses that the signing attorney has not done a specific investigation of that debtor's accounts, and may be relying on assumptions to believe that non-exempt funds may exist.

## ANALYSIS

### 1. *Summary Judgment Standards.*

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion " 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' " *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. *Guarino v. Brookfield Township Trs.,* 980 F.2d 399, 404 (6th Cir.1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. den., Superior Roll Forming Co. v. InterRoyal Corp.,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment ...," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. *United States v. Diebold Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. The court must assess "whether there is the need for trial—whether, in other words, there are

**2.** Specifically, *Todd v. Weltman Weinberg, supra,* and *Griffith v. JB & R,* Case No. 1:04–cv– 238 (S.D.Ohio, Beckwith, C.J.).

any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. "If the evidence is merely colorable, . . ., or is not significantly probative, . . ., the court may grant judgment." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979), *cert. dismissed,* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

2. *Fair Debt Collection Practices Act.*

■ Congress enacted this statute "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Sixth Circuit has noted that the Act is "extraordinarily broad" and must be enforced as written, even when eminently sensible exceptions are proposed in the face of an innocent and/or de minimis violation. See *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir. 1992). However, the Sixth Circuit has also cautioned that it will not "countenance lawsuits based on frivolous misinterpretations or nonsensical assertions of being led astray." *FHLMC v. Lamar,* 503 F.3d 504, 514 (6th Cir.2007) (quoting *Jacobson v.*

*Healthcare Fin. Servs., Inc.,* 434 F.Supp.2d 133, 138 (E.D.N.Y.2006)). The Court must apply the "least sophisticated consumer" test to objectively determine whether a challenged practice violates the statute. *Smith v. Transworld Systems, Inc.,* 953 F.2d 1025, 1029 (6th Cir.1992).

3. *The Ohio Garnishment Statute.*

Ohio Rev.Code 2716.11 requires the affiant (the judgment creditor or its attorney) to attest to having a "reasonable basis to believe" that the debtor "may" have nonexempt funds. When Javitch signed the affidavit, the statute had recently been amended. The prior version required the affiant to affirm that he has "a good reason to believe and does believe" that the garnishee "has" non-exempt funds. Judge Dlott recently held that the prior statute required both an objective and a subjective belief. See *Jordan v. Thomas & Thomas,* Case No. 1:04–cv–296, Order of September 26, 2007 (Dkt.44) at p. 17.

The current version eliminates the subjective aspect ("does believe"), and requires a "reasonable basis to believe." This standard is not the equivalent of "probable cause" to believe, and plainly does not require "actual knowledge" on the part of the affiant. This is reflected in the discussion in *Todd, supra,* where the Sixth Circuit ultimately concluded that the Ohio statute requires "some sort of investigation **or other reasonable basis**" for the affiant's belief. The judgment creditor need not undertake a specific investigation, nor employ any specific discovery methods, in order to satisfy the "reasonable basis" test. To so hold would be to equate objective "reasonableness" with actual knowledge, which the current statute clearly does not require.

JB & R strenuously argues that postjudgment debtor discovery is generally ineffective. In JB & R's collective experi-

ence, debtors usually do not appear for debtor exams and do not respond to written discovery. JB & R suggests that "most" debtors avoid dealing with outstanding debt, so they ignore validation notices, refuse to answer their telephone, and do not respond to legal pleadings. JB & R suggests that this collective experience is also a reasonable basis upon which JB & R attorneys may rely.

"Reasonable" is a word infused with meaning developed in numerous legal settings. It means more than a guess, or a hope, or an assumption based on conjecture. The Court believes the term requires an objective evaluation of all of the surrounding circumstances forming the basis for the belief. Analogous formulations can be found, for example, in Ohio Jury Instruction § 7.10 defining reasonable care: "Reasonable care is the care that a reasonably careful person would use under the same or similar circumstances." Fed. R.Civ.P. 11 imposes upon attorneys a duty of "reasonable inquiry" into both the facts and the law, which is objectively measured by considering all of the circumstances existing when the attorney signed a pleading. See, e.g., *Jackson v. Law Firm of O'Hara,* 875 F.2d 1224, 1229 (6th Cir. 1989).

### 4. *FDCPA Claims.*

■ Javitch's own testimony summarizes the "reasonable basis" he believes he had for signing the affidavit:

> My basis for believing that [non-exempt finds may exist] is the procedures that exist in this office for determining whether this execution is appropriate for this debtor based upon the documentation we received from the client, the work that the collector did on the file, his conversation with the debtor, his analysis of the debtor's assets, his review of the credit information concerning this debtor and his work up of the

information that went into his decision to proceed with this attachment.

(Javitch Deposition pp. 16–17)

In Plaintiff's case, however, the documentation JB & R received from Midland Funding shed little or no light on Plaintiff's finances. The work that the collector did on Plaintiff's file (as reflected in the file history) was largely rote: he arranged for telephone calls, put the case on the "suit review list," and followed up on deadlines. No one at JB & R ever had a conversation with this debtor prior to initiating the garnishment. The record does not reflect any analysis of any assets that JB & R uncovered, as the only information obtained was in the negative (she did not own real property in Hamilton County, she had not recently declared bankruptcy, and she had no other reported collection actions against her). The JB & R collector states that his review of the credit report revealed "four trade lines." (Doc. 49, Exhibit 3, Stefanelli Dec. ¶ 20) Plaintiff's credit report seems to indicate that none of these trade lines was "active", however, and one apparently had a large overdue balance. (Stefanelli's declaration does not discuss the mailing address discrepancy revealed by the credit report.) JB & R in fact had almost no affirmative "information" about this debtor's financial status or assets. Rathbone admitted as much; he testified that the "unverified assumptions" referenced in the affidavit include "the assumption that we've done everything we can to eliminate the possibility that exempt funds are there . . . it's unverified because there's no way to verify it. The only way to verify it is to have the debtor tell you. . . . As I said before, our assumptions are in the negative, not the positive." (Rathbone Deposition at p. 93)

■ JB & R also suggests that Ohio law creates a rebuttable presumption that nonexempt funds exist unless and until the

debtor establishes otherwise. This presumption, according to JB & R, also provides a reasonable basis upon which to pursue a garnishment. The Court disagrees. It is true that Ohio law places the burden of proof on the debtor to establish that garnished funds are exempt. See, e.g., *Ashtabula County Medical Center v. Douglass*, 1988 WL 59836, 1988 Ohio App. LEXIS 2108 (11th Dist., June 3, 1988), a case arising under the prior garnishment statute. The appeals court noted that the judgment creditor's affidavit "... is the only area in the statute requiring the creditor to affirm that he has good reason to believe that the garnishment is proper and that the funds being sought are not exempt. The burden of proof on the existence or applicability of an exemption or defense rests with the judgment debtor." *Id.* at M. See also, *Monogram Credit Card Bank v. Hoffman*, 2003 Ohio 1578 (Ohio App.2003), concerning non-wage garnishment and following *Douglass*. But the burden of proof post-garnishment does not give rise to a pre-garnishment legal **presumption** that the debtor may have non-exempt funds. Ohio Rev.Code 2716.11 contains no such presumption; instead, it requires an objective "reasonable basis" for the judgment creditor to institute garnishment in the first place.

■ JB & R argues that the garnishment affidavit could not mislead or deceive Plaintiff, within the scope of 15 U.S.C. § 1692e, because the affidavit was directed to the state court judge, who would "rely" on the affidavit to issue a garnishment order. The Court disagrees. It is clear that a representation made in a legal pleading is actionable under the FDCPA. The Seventh Circuit recently rejected an analogous argument, that a communication with a debtor's lawyer is exempt from the FDCPA, by noting that the statute (15 U.S.C. § 1692a(2)) defines "communication" as "the conveying of information regarding a debt *directly or indirectly* to

any person through any medium." *Evory v. RJM Accruisitions Funding LLC*, 505 F.3d 769, 772–73 (7th Cir.2007)(emphasis in original). Post-judgment attachment activities are not exempt from FDCPA's coverage simply because the creditor's initial "communication" in the form of the affidavit must be directed to the state court.

After a careful review of Defendants' arguments and evidence, the Court concludes that judgment as a matter of law cannot be granted on the question of whether the affidavit may have violated the FDCPA, because disputed issues of fact exist as to whether Javitch had a "reasonable basis" for his belief at the time he executed the garnishment affidavit. That determination must be made by the trier of fact, based on an evaluation of all of the surrounding facts and circumstances.

Plaintiff's motion argues that summary judgment in her favor is proper, because the form affidavit is internally contradictory and therefore deceptive or misleading to an unsophisticated consumer as a matter of law. Plaintiff asks how an attorney can declare he has a reasonable basis to believe something when his belief may be based on "unverified assumptions." Defendants counter that this argument is not specifically alleged in Plaintiff's complaint. The disclaimer language of the affidavit has been at issue almost from the start of this case; it was discussed in Defendants' motion to dismiss and was the subject of discovery. Defendants can hardly claim they are surprised by Plaintiff's arguments.

■ JB & R defends its disclaimer language by noting that it truthfully communicates to the debtor the fact that the signing attorney has not investigated the account and may be relying on unverified assumptions. The Court concludes that

the affidavit, standing alone and without regard to the circumstances of any individual debtor, does not violate the Act as a matter of law. The affidavit materially differs from a form collection letter which is often the subject of FDCPA complaints. See, e.g., *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360 (2nd Cir. 2005), where a law firm used a form letter to debtors to initiate its collection attempts. The letter stated in part that "At this time, no attorney with this firm has personally reviewed the particular circumstances of your account." Plaintiff alleged the letter violated the FDCPA because the statement misled consumers about the level of attorney involvement. The district court granted judgment on the pleadings to the law firm, which was affirmed by the Second Circuit. The Court concluded that even the least sophisticated debtor would understand that no attorney had specifically examined the circumstances of that debtor's file at the time the letter was written.

Here, however, the affidavit signed in each debtor's case is in fact based upon the investigation undertaken by JB & R; in that sense the affidavit is literally true, and does not violate the FDCPA's proscription on "false" statements. The Court also concludes that the least sophisticated debtor would not be misled or deceived by the affidavit. It clearly states that the person signing the affidavit has not investigated the garnished account, nor assessed any potential available exemption. The Court also rejects Plaintiff's suggestion that JB & R violates the FDCPA by relying on its staff to perform the standardized investigative tasks on each firm file. The dispositive issue is whether such reliance, including reliance on "unverified assumptions," is "reasonable" such that the affidavit is not false, deceptive, misleading, or unfair. Given the factual differences in each situation that must be considered to determine that issue, the

Court concludes that the affidavit, on its face and standing alone, does not violate the statute.

### 5. *FDCPA's Bona Fide Error Defense.*

The FDCPA contains an affirmative defense, 15 U.S.C § 1692k(c), providing that a debt collector will not be liable if he can show "that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." See, e.g., *Lewis v. ACB Business Services*, 135 F.3d 389 (6th Cir. 1998). There, a file sent to the debt collector by the creditor was incorrectly "coded" by the creditor, causing the debt collector to call the debtor. Even though the telephone call violated a specific section of the FDCPA, the court concluded it was a bona fide error. The phone call was inadvertently placed, the debt collector had established procedures to avoid that specific error, and those procedures actually detected and fixed the creditor's coding error within hours, preventing additional contact with the debtor. See also, *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir.1992), where the defense applied to a clerical error in sending a collection letter after the debt collector's main office in a different state had received the debtor's cease-communication letter less than 24 hours before.

Plaintiff argues this defense is unavailable because Javitch "intended" to sign the affidavit. The statutory defense applies to unintentional violations of the FDCPA; even "intentional" conduct can be an unintentional statutory violation, as the Sixth Circuit specifically held in *Lewis*, 135 F.3d at 401–402.

Defendants argue they did not intend to attach exempt funds, and that their procedures are reasonably adapted to avoid that result. As Plaintiff repeatedly notes, how-

ever, the alleged violation is not the attachment, it is the act of executing the garnishment affidavit. The Court has found there are disputed issues of fact on this question. The Court also concludes whether JB & R's procedures are "reasonably adapted" to avoid violating the statute presents similar disputes which must be resolved by the trier of fact.

### 6. *Plaintiff's State Law Claim.*

█ Plaintiff's complaint alleges the affidavit violated the Ohio Consumer Sales Practices Act, Ohio Rev.Code 1345.02 and 1345.03. This statute prohibits a "supplier" from committing unfair or deceptive acts concerning a consumer transaction. The statute specifically excludes transactions between financial institutions and their customers. Defendants renew the argument made in their motion to dismiss: because Plaintiff's underlying debt is a bank credit card, the transaction at issue is exempted from OCSPA. The Court rejected this argument in denying Defendants' motion to dismiss (see Doc. 29 at pp. 9–10), noting that no definitive Ohio authority suggests that an assignee of a financial institution, an assignee whose only business is to collect past due or defaulted debt, is also entitled to the financial institution exemption. Defendants cite no recent authority on this question.

The OCSPA covers far more transactions, through its broad definition of "supplier," than does the FDCPA. The Ohio Legislature specifically exempted financial institutions from this statute, likely in recognition of the fact that banks are heavily regulated by other statutes and codes. A bank customer has other adequate remedies if a bank should engage in deceptive or unfair conduct in making a loan or issuing a credit card. But if the financial institution sells a past due or defaulted debt at a deep discount to an unrelated party, whose only business is debt collection, the sound policy for the financial institution exemption evaporates.

If JB & R had directly represented Columbus Bank and Trust in attempting to collect the debt, an OCSPA claim would not lie against them because the transaction sued on would not be covered by the statute. But JB & R was representing Midland, which is not a "financial institution" and which is apparently within the scope of the OCSPA. Therefore, the Court denies summary judgment to Defendants on Plaintiff's claim under the Ohio statute.

### 7. *Defendants' Motion to Strike.*

Plaintiff filed an affidavit of Judy Nelson, a subpoena summons processor at National City Bank, in support of her summary judgment motion. (Doc. 53, Exhibit) Nelson asserts that it is "bank policy" to respond to lawfully issued subpoenas, which may include disclosure of customers' bank statements. Plaintiff proffers this declaration to rebut the deposition testimony of Rathbone and Javitch. Both attorneys, with long experience in debt collection legal practice, testified they believed the firm could not subpoena bank records due to privacy rules. Rathbone referred to a "Banking Information Privacy Act." (Rathbone Deposition p. 59) Javitch testified it was impossible to get bank statements before a garnishment "... because they're confidential records between the bank and customer and they're not available to a creditor." (Javitch Deposition pp. 19–20).[3] JB & R argues in its motion

---

**3.** 15 U.S.C. § 6802(e)(8), part of the Graham–Leach–Bliley Act, exempts "judicial process" from the non-disclosure requirements of the statute. Whether this phrase includes civil discovery is not definitively resolved, as discussed in *Martino v. Barnett*, 215 W.Va. 123, 595 S.E.2d 65, 70–72 (2004).

that bank subpoenas "require notice to a judgment debtor and two weeks or more to respond; as soon as a judgment debtor receives a copy of a bank subpoena, they invariably drain the account leaving nothing to attach." (Doc. 49 at p. 18)

The Court need not determine if JB & R is legally prohibited from subpoenaing a debtor's records in order to resolve the summary judgment motions. For that reason, the Court has not considered the Nelson affidavit in ruling on the motions. The Court will deny the motion to strike the affidavit, and overrule Defendants' objection that Plaintiff failed to disclose Nelson as a witness. Her testimony is intended to rebut the deposition testimony cited above. The use of any specific form of pre-attachment discovery is one facet of the totality of the circumstances that the trier of fact might consider in this case. Defendants' evidentiary objections to any offered testimony from Nelson are fully preserved for trial.

### 8. *Class Certification.*

Plaintiff seeks certification of a class that she defines in her motion:

> All persons (1) who meet the definition of "consumer" found in 15 U.S.C. § 1692a(3); (2) who had judgments taken against them in the State of Ohio in cases involving a "debt" as defined in 15 U.S.C. § 1692a(5); and (3) with respect to whom any Javitch personnel executed and filed, on or after September 5, 2005, an affidavit of the type attached hereto as Exhibit A.

Class certification is appropriate if Plaintiff satisfies the four requirements of Fed.R.Civ.P. 23(a) and at least one subsection of Rule 23(b). The Court must rigorously analyze each factor. *Reeb v. Ohio Dept. of Rehab. & Correc.*, 435 F.3d 639, 644 (6th Cir.2006). Each requirement is discussed in turn.

*Rule 23(a) (1) Numerosity.* Accepting the proposed class definition on its face, Plaintiff can satisfy this requirement, which is not intended to be onerous. The evidence in the record suggests that JB & R attorneys executed thousands of identical garnishment affidavits involving FDCPA "consumers" during the defined time frame.

*Rule 23(a)(2) Commonality.* Establishing commonality is also not an onerous task. Plaintiff must show a common course of conduct, or a common legal or factual issue. Factual differences among putative class members do not defeat commonality. Plaintiff argues that the law firm has a common course of conduct: its attorneys sign identical form garnishment affidavits based upon firm procedures and delegate investigation to non-attorney employees. This is sufficient to satisfy the commonality requirement.

*Rule 23(a)(3) Typicality.* Plaintiff must demonstrate that her claim is typical of the class claims. A claim is typical if it is based on the same legal theory, or arises from the same course of conduct by the Defendants. As the Sixth Circuit noted in *Sprague v. General Motors*, 133 F.3d 388, 399 (6th Cir.1998) (en banc), "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." Defendants admit that the same affidavit form is used by firm attorneys in thousands of cases. Plaintiff's claim is therefore typical of the proposed class.

*Rule 23(a)(4) Adequate Representation.* Plaintiff must be an adequate class representative and have qualified counsel able to represent the class. Plaintiff contends there are no class conflicts or antagonisms between her and the putative class

members. Her counsel have shown their willingness and ability to discover and prosecute her claims. Defendants do not contest counsel's adequacy, but suggest that Plaintiff is not adequate because she has personal claims for compensatory damages in addition to the statutory damages she seeks on behalf of the class. Differences in the type or extent of damages do not make her inadequate, so long as there are no conflicts between Plaintiff's assertion of damages and those of absent class members. The particular degree to which Plaintiff and the absent class members may have been damaged by Defendants' conduct may be an issue requiring individual attention, but does not make Plaintiff an inadequate representative. Plaintiff's affidavit (Doc. 67) states that she is willing to accept her pro rata share of any class recovery in this case, belying any inherent conflict between her and the putative class members concerning classwide damages available under the FDCPA.

■ Once Plaintiff has satisfied Rule 23(a), she must also establish the propriety of certification under Rule 23(b). Plaintiff seeks certification under Rule 23(b)(3), permitting certification when "questions of law and fact common to the members of the class predominate over any questions affecting only individual members" and when the Court finds that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry is more demanding than Rule 23(a)'s commonality prong. The Court concludes that Plaintiff has not satisfied this requirement.

As discussed at length above, whether Javitch had a "reasonable basis" for a belief when he signed the affidavit raises disputed issues of fact not amenable to resolution under Rule 56. In order to determine whether any JB & R attorney lacked a "reasonable basis" to execute an affidavit to garnish any putative class member's bank account will depend upon the individual circumstances that pertain to that class member. It is probable that some affidavits were signed after specific information was obtained by the firm about non-exempt assets. Perhaps some affidavits were signed in reliance on information obtained by the firm that turned out to be erroneous, and later successfully challenged by the debtor in state court. It is also conceivable that affidavits were executed in cases where information about a debtor's exempt status was missed or overlooked, or even ignored. See, e.g., *Hogue v. Palisades Collection, LLC,* 494 F.Supp.2d 1043 (S.D.Iowa 2007), where a debtor's attorney told the debt collector (also an attorney who had filed suit to collect the debt) that the debtor's income was entirely exempt, and provided the debtor's affidavit to that effect. The defendant-attorney then took a default judgment and instituted garnishment, claiming he had no "independent verification" of the exemption. (The district court denied a motion to dismiss plaintiff's FDCPA claims.) The potential factual variations loom large.

A similar situation was presented in *Wahl v. Midland Credit Management,* 243 F.R.D. 291 (N.D.Ill.2007). The plaintiff sought certification of two classes, one based on a debt collector's letter, and a second based on attempts to collect the debt after plaintiff disputed it. The district court certified the first class, because the letter's challenged representation was made to all class members in a standard form letter, and was based upon the same facts. The collector stated that the "principal balance" included both principal and interest accrued by the original creditor, a common representation that required no investigation into the particulars of the original debt. However, the second proposed class failed to satisfy Rule 23(b)(3).

The plaintiff alleged that the defendant had a standard policy of continuing collection efforts even after the debtor lodged a valid dispute. While the validity of that practice would be a common issue, the district court noted that "determining the existence of this practice in each individual case, as well as whether each plaintiff legitimately disputed the debt, would predominate over the common question of whether Defendants violated the FDCPA." *Id.* at 301. The same conclusion applies here. The record establishes that the particular methods used to investigate a debtor before initiating garnishment vary. To identify the individuals who may be similarly situated to Plaintiff would require a review of each JB & R file and the information available at the time the garnishment affidavit was signed. The Court has rejected Plaintiff's contention that the form affidavit, standing alone and without regard to what particular information JB & R had, violates the FDCPA. The need to review the specific circumstances in each debtor's case to determine if a "reasonable basis" existed predominates over any common issues.

For the same reasons, a class action is not superior to individual adjudication. The Court recognizes the laudable policy at the "core of the class action mechanism ... to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). But that laudable goal is eclipsed in this case by the nature of the claim and the Court's conclusion that a case by case determination is required in order to determine if Defendants violated the statute.

Defendant raises several other objections to class certification based on the *Rooker–Feldman* doctrine and potential res judicata defenses against absent class members. Neither of these arguments pertain to this Plaintiff, but may have some validity with regard to absent putative class members. Given the Court's disposition of the Rule 23 issues, however, the Court sees no need to address these arguments in detail, other than to note they support the Court's conclusion under Rule 23(b)(3).

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for partial summary judgment (Doc. 53) is denied. Defendants' motion for summary judgment (Doc. 49) is denied. Defendants' motion to strike (Doc. 58) is denied, without prejudice to Defendants' objections at trial to Nelson's testimony. Plaintiff's motion for class certification (Doc. 42) is denied.

SO ORDERED.