O’Neill, J.,
dissenting.
{¶ 34} I dissent from the majority’s decision answering the certified questions in the negative. I believe that this court should answer the certified questions in the affirmative and hold that the Consumer Sales Practices Act (“CSPA”) applies to mortgage-loan servicers.
{¶ 35} In this case, and in many like it, a residential homebuyer contracted with a lender to provide her with a residential real estate loan. Subsequent to *39 executing the note and mortgage for the property, the lending institution entered into an agreement with a mortgage servicer, HomEq Servicing. HomEq receives payment for its services by keeping a portion of the consumer’s residential mortgage payments. Thus, the lender is contractually responsible for paying HomEq, but the payment is incorporated into the interest rate and fees paid by the consumer, in effect transferring the cost of HomEq’s services to the consumer. As described by the majority opinion, HomEq’s services are extensive and primarily involve interaction with the consumer. But HomEq is not a party to the mortgage contract, and although the consumer does not necessarily want to have any sort of relationship with HomEq, he or she has no choice in the matter.
{¶ 36} According to Sondra Anderson, the plaintiff/consumer in the underlying case, her complaint alleges that HomEq failed to apply her mortgage payments in the manner required by her note and mortgage, failed to provide accurate information in response to her repeated inquiries about her residential mortgage loan, and accepted payments without acknowledging them and without forwarding them to her mortgage-loan lender. Thus, she was subject to HomEq’s neglect and/or malfeasance, and yet she had no means of recourse because she did not have a contractual relationship with HomEq.
{¶ 37} Although some federal district courts have interpreted Ohio’s CSPA in similar cases, the federal court reviewing the present case determined that there was no controlling precedent on the definitions of “consumer transaction” and “supplier” in the context of mortgage-loan servicers. I agree with Anderson’s assertion that mortgage-loan-servicing companies transfer their services to the consumers, because the provided services do not constitute part of the original real estate transaction and because the plain language of R.C. 1345.01(A) does not provide any exceptions for mortgage servicers.
{¶ 38} R.C. 1345.01(A) provides as follows:
“Consumer transaction” means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. “Consumer transaction” does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or non-bank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public *40 accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.
{¶ 39} To summarize the foregoing language, the statute establishes that a consumer transaction includes transactions that involve the provision of goods, services, or intangibles to individual consumers for personal, family, or household purposes. The statute then provides exceptions. Those exceptions include transactions between a customer and a financial institution, a dealer in intangibles, or an insurance company. The statute then provides an exception to those exceptions: even if the entity is a financial institution or other exempted entity, the transaction nonetheless constitutes a consumer transaction if it is a particular kind of short-term loan under $500, or if it is a transaction involving a home construction contract or a transaction in connection with a residential mortgage involving an interaction between a customer and his or her loan officer, mortgage broker, or nonbank mortgage lender. Finally, the statute exempts transactions between certain professionals and their clients or patients, but those transactions are not pertinent to the present controversy.
{¶ 40} The CSPA is a remedial law, so it must be liberally construed in favor of the consumer. Einhorn v. Ford Motor Co., 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990), citing R.C. 1.11. HomEq is not a financial institution, dealer in intangibles, or an insurance company, nor does it fit within the definitions of loan officer, mortgage broker, or nonbank mortgage lender. Thus HomEq does not fit within the exceptions for any particular entities. Because mortgage servicers are not excluded by the statute, they must be included, and their services therefore constitute consumer transactions that are covered by the CSPA.
{¶ 41} The majority’s primary holding is that HomEq’s collection of mortgage payments and other services cannot be considered consumer transactions, because the consumers’ only contractual relationship is with the lending institutions and because the underlying transaction that HomEq’s services facilitate is the original real estate transaction. Thus, the majority focuses entirely on the transactions rather than on the parties to the transactions. However, the language of R.C. 1345.01(A) demonstrates that the nature of the underlying transaction does not matter as much as the identity of the commercial entity involved in the transaction. Specifically, the statute provides that the transaction between a consumer and a “nonbank mortgage lender” qualifies as a consumer transaction, even though that relationship will obviously involve a pure real estate transaction.
*41 {¶ 42} Further, in many federal decisions that address the applicability of Ohio’s CSPA to mortgage-loan servicers, the courts have held that the CSPA may apply. Dowling v. Litton Loan Servicing, L.P., S.D.Ohio No. 2:05-CV-0098, 2006 WL 3498292, at *13-14 (Dec. 1, 2006); Kline v. Mtge. Electronic Registration Sys., Inc., S.D.Ohio No. 3:08cv408, 2011 WL 1233642, at *4-5 (Mar. 29, 2011); Jent v. BAC Home Loans Servicing, L.P., S.D.Ohio No. l:10-CV-00783, 2011 WL 2971846, at *3 (July 21, 2011); Munger v. Deutsche Bank, N.D.Ohio No. 1:11-CV-00585, 2011 WL 2930907, at *9 (July 18, 2011); Sims v. CitiMortgage, Inc., N.D.Ohio No. 1:12 CV 00096, 2013 WL 310236, at *5 (Jan. 25, 2013). These decisions rely on the principle of liberal application in favor of the consumer or analogize mortgage servicers to consumer-debt collectors. “Ohio courts have long held that entities engaging in the collection of consumer debts are suppliers.” Kline at *4, citing Celebrezze v. United Research, Inc., 19 Ohio App.3d 49, 482 N.E.2d 1260 (9th Dist.1984).
{¶ 43} By way of comparison, the evolution of court holdings on the issue whether debt collectors fall within the purview of the CSPA confirms that the appropriate focus in this analysis is on the identity of the commercial entity involved in the transaction instead of the nature of the original underlying transaction. Early federal decisions on the subject had determined that debt collecting did not involve consumer transactions under the Ohio CSPA if the original lender was a financial institution, even when the debt collection took place after the debt had been transferred to a debt collector. See Gionis v. Javitch, Block & Rathbone, 405 F.Supp.2d 856, 869 (S.D.Ohio 2005). Later, federal courts rejected that view and determined that an assignee of a debt who is not a financial institution has no entitlement to the financial-institution exemption to the CSPA. The reasoning is compelling. A debt collector is not a financial institution, much as a mortgage servicing company is not as well. See Lee v. Javitch, Block & Rathbone, L.L.P., 522 F.Supp.2d 945, 956 (S.D.Ohio 2007). The holding that a nonexempted entity cannot hide behind the exempted status of the original entity is supported by the fact that “[a] bank customer has other adequate remedies if a bank should engage in deceptive or unfair conduct in making a loan or issuing a credit card. But if the financial institution sells a past due or defaulted debt at a deep discount to an unrelated party, whose only business is debt collection, the sound policy for the financial institution exemption evaporates.” Id.
{¶ 44} In fact, the other exceptions to the CSPA are also justified by the fact that the transactions involved are heavily regulated by other statutory schemes. See, e.g., Heritage Hills, Ltd. v. Deacon, 49 Ohio St.3d 80, 83, 551 N.E.2d 125 (1990) (landlord-tenant lease agreements are already well regulated by R.C. Chapter 5321); 7A, Part I, National Conference of Commissioners on Uniform State Laws, Uniform Laws Annotated, Business and Financial Laws, Uniform *42 Consumer Sales Practices Act, Official Comment to Section 2(1), at 73 (Master Ed.2002) (the sale of real estate is completely excluded from the CSPA “[o]n the assumption that land transactions frequently are, and should be, regulated by specialized legislation”). The fact that mortgage-loan servicing is not so regulated is all the more reason to find that the CSPA applies.
Murray & Murray Co., L.P.A., John T. Murray, Leslie O. Murray, and Michael J. Stewart, for respondent.
Porter, Wright, Morris & Arthur, L.L.P., James D. Curphey, Kathleen M. Trafford, and L. Bradfield Hughes; and Buckley Sandler, L.L.P., and Benjamin B. Klubes, for petitioner.
Crawford, Lowry & Associates, L.L.C., and G. Ian Crawford; and Wells Law Office, Inc., and Amy L. Wells, urging that the certified questions be answered in the affirmative for amicus curiae Ohio Association for Justice.
Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor, and Jeffrey R. Loeser, Assistant Attorney General, urging that the certified questions be answered in the affirmative for amicus curiae the Ohio Attorney General.
{¶ 45} Given the foregoing history of protecting consumers when they are forced into the hands of third-party debt collectors, it is wholly appropriate to also protect residential-mortgage-loan borrowers when they are forced into the hands of mortgage-loan servicers. I would therefore respond to the first certified question by holding that the servicing of a borrower’s residential mortgage loan constitutes a “consumer transaction” as defined in R.C. 1345.01(A).
{¶ 46} The second certified question asks whether a mortgage-loan servicer constitutes a “supplier” in a consumer transaction, as defined in R.C. 1345.01(C). That statute defines a supplier as an entity that effects consumer transactions. Because I believe that the correct answer to the first certified question is yes, i.e., the transactions performed by a mortgage-loan servicer are consumer transactions, I would also answer the second question in the affirmative, i.e., a mortgage-loan servicer is a supplier in a consumer transaction.
{¶ 47} The scope of the term “consumer transaction” is broad, and its exceptions are very specific and limited. HomEq’s services clearly do not fit within any of the exceptions articulated in R.C. 1345.01. We owe it to the public to curb the activities of unregulated entities when it is the consumers, and only the consumers, who are left homeless and in dire financial straits as a result of the entities’ unscrupulous and/or negligent activities. To do otherwise shirks our duty pursuant to R.C. 1.11 to liberally construe the CSPA in favor of the consumer. I must therefore dissent.
*43 Linda Cook, Lauren E. Dreshman, Tammy L. Greenwald, Aneel L. Chablani, and Andrew D. Neuhauser, urging that the certified questions be answered in the affirmative for amici curiae Ohio Legal Services Programs, Coalition on Homelessness and Housing in Ohio, Toledo Fair Housing Center, Miami Valley Fair Housing Center, and the National Consumer Law Center.